UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KENAI DRILLING LIMITED, a Delaware Corporation, and KENAI DRILLING LIMITED EMPLOYEE BENEFIT PLAN,<br><br>Plaintiffs,<br><br>v.<br><br>SUN LIFE ASSURANCE COMPANY OF CANADA,<br><br>Defendant. | Case No. 2:24-cv-01559-CDS-EJY<br><br>**ORDER**<br><br>**AND**<br><br>**REPORT AND RECOMMENDATION** |

Pending before the Court is Plaintiffs Kenai Drilling Limited and Kenai Drilling Limited Employee Benefit Plan's Petition to Compel Arbitration (ECF No. 1-2). Also pending are Plaintiffs' Motion for Leave to Supplement this Petition (ECF No. 28) and Motion for Leave to File an Amended Complaint (ECF No. 27). The Court has considered Plaintiffs' Petition and Motions, Defendant's Response to the Petition (ECF No. 13), and Plaintiffs' Reply (ECF No. 26).

**I.     Background**

This case arrives before the Court in the form of a Petition to Compel Arbitration originally filed in state court. ECF No. 1-2. The underlying dispute involves an alleged underpayment by Kenai Drilling Limited ("Kenai") and Kenai Drilling Limited Employee Benefit Plan (the "Kenai Plan") to non-party Sunrise Hospital and Medical Center ("Sunrise") on a claim made for services provided to a plan participant. *Id.* at 3-4. Through an arrangement between the Kenai Plan's third-party administrator, Hawaii Mainland Administrators ("HMA"), and Connecticut General Life Insurance Company ("Cigna"), the Kenai Plan had access to discounted rates that were negotiated between Cigna and various healthcare providers, including Sunrise. ECF No. 13 at 3. The contract between Cigna and Sunrise, the Hospital Services Agreement ("HSA"), is the agreement under which both the underlying dispute and the instant Petition arise.

1

In addition to the agreement with Cigna, the Kenai Plan has a stop-loss insurance policy (the "Policy") with Sun Life Assurance Company of Canada ("Sun Life"), the Defendant in the instant action. In sum, the Policy provides that Sun Life will reimburse the Kenai Plan for all eligible expenses incurred by a plan participant that exceed $45,000. ECF No. 1-2 at 173, 176.

Section II.A.9 of the HSA, to which Sun Life is not a party, states the Kenai Plan, as a contracted payor, is required "to pay in accordance with and abide by the financial terms" of the HSA. *Id.* at 19, 30. Section III.O.3 of the HSA states that all "[d]isputes regarding [Sunrise]'s payment or termination … and any other dispute between the parties regarding the performance or interpretation of the [HSA] shall be resolved by arbitration." *Id.* at 142-43.

Between February 17 and September 30, 2022, Sunrise provided care to Baby K.T. Sunrise represents that each of the services provided were pre-certified and priced by Cigna according to the HSA. *Id.* at 20. The total amount billed to the Kenai Plan, after applying the discounted rates under the HSA, was $9,371,609.39. *Id.* at 22. Based on representations by the parties, it appears only a fraction of this amount was actually paid. ECF No. 13 at 5; ECF No. 26 at 3.

After satisfying all conditions precedent, Sunrise initiated arbitration proceedings under Section III.O.3 of the HSA against Plaintiffs, HMA, and Cigna claiming damages in the amount of the underpayment. ECF No. 1-2 at 19. Plaintiffs in this action, as defendants in the underlying arbitration proceeding, included in their responsive pleading third-party complaints against HMA and Sun Life seeking contractual and equitable indemnification from each. *Id.* at 74. It appears from the record before the Court that although HMA responded and made an appearance in the arbitration proceedings, Sun Life did not. Because of this, Plaintiffs filed the instant Petition to Compel Arbitration against Sun Life in state court on July 24, 2024, citing NRS Chapter 38 and the Federal Arbitration Act ("FAA") as bases. *Id.* at 2-3. Sun Life timely removed to federal court on August 23, 2024. ECF No. 1. After Sun Life had filed its brief in opposition to the Petition to Compel Arbitration, Plaintiffs included with their Reply a Motion for Leave to File an Amended Complaint should the Court deny their Petition. ECF No. 27.

## II. The Parties' Arguments

Sun Life is not a party to the HSA. This is undisputed. Nonetheless, Plaintiffs assert two theories under which they believe Sun Life is subject to the HSA's arbitration provision. First, Plaintiffs argue that Sun Life is a third-party beneficiary to the HSA supported by the proposition that third-party beneficiary status can bind a non-signatory to an agreement to arbitrate. ECF No. 1-2 at 7 *citing Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 189 P.3d 656 (Nev. 2008), and *Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006). Second, Plaintiffs argue that Sun Life is barred from avoiding the HSA's arbitration provision under the doctrine of equitable estoppel. ECF No. 1-2 at 10-11; ECF No. 26 at 10-11 *citing Truck Ins. Exch.* and *RUAG Ammotec GmbH v. Archon Firearms, Inc.*, 538 P.3d 428 (Nev. 2023).[1]

According to Plaintiffs, Sun Life is a third-party beneficiary of the HSA because Sun Life received the same discounted rates under that agreement as the Kenai Plan. ECF No. 1-2 at 9. In Plaintiffs' view, this demonstrates that "the HSA clearly intended" to benefit Sun Life despite Sun Life not being a signatory to the agreement. *Id.* at 10. To support their argument, Plaintiffs point to provisions of the Policy stating Sun Life would not reimburse the Plan for "[a]ny amount paid … in excess of a negotiated provider discount," and requiring Plaintiffs to provide a "discount amount" for any expenses submitted as part of a claim under that Policy. *Id.* Plaintiffs offer this as evidence that Sun Life was aware of the discounted rates under the HSA and benefitted from them. *Id.* at 10-11.

Plaintiffs' alternative argument in favor of equitable estoppel treads much the same ground. Citing to the portion of the *Truck Ins. Exch.* opinion stating that "a nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause," 189 P.3d at 661 (internal quotations omitted), Plaintiffs argue Sun Life "directly benefitted from the discounted rates" of the HSA and therefore cannot avoid that

---

[1] Plaintiffs also argue at various times that Sun Life is a third-party beneficiary of the HSA by virtue of acting as Plaintiffs' agent. ECF No. 1-2 at 11. Although agency is a separate theory under which a non-signatory may be bound by a contract, Plaintiffs present no independent agency argument in their initial moving papers and instead include it as part of their third-party beneficiary argument. *Id.* In their Motion for Leave to Supplement, Plaintiffs separate agency from their third-party beneficiary argument. ECF No. 28 at 5-6. As explained *infra* at 17-18, this argument fails for independent legal reasons.

3

agreement's arbitration provision. ECF No. 1-2 at 11. Separate from this theory, Plaintiffs argue for the first time in their Reply that Sun Life also benefited from the HSA by utilizing the agreement's audit provision to initiate a third-party audit of the underlying claim, citing to additional evidence suggesting that the alleged underpayment was the result of an audit performed at Sun Life's request. ECF No. 26 at 3-5, 10.

In its Response, Sun Life argues that Plaintiffs' Petition is mistaken as to the facts and law. First, Sun Life asserts that the Nevada Supreme Court has never held third-party beneficiary status to be sufficient grounds to compel a non-signatory to arbitrate. As Sun Life points out, although Plaintiffs list "third party beneficiary" as a sixth basis on which *Truck Ins. Exch.* held non-signatories could be bound by an arbitration agreement, ECF No. 1-2 at 7, that opinion listed five theories and third-party beneficiary was not one of them. ECF No. 13 at 7-8. Second, Sun Life argues that it is not a third-party beneficiary because there is no evidence within the HSA of intent to benefit Sun Life, nor is there evidence that Sun Life acted in reliance on such benefit. ECF No. 13 at 9-10. Third and finally, Sun Life argues the doctrine of equitable estoppel does not apply because Sun Life did not receive a direct benefit from the HSA, and the doctrine is only properly applied to estop a claimant who sues under a contract from avoiding an arbitration provision; estoppel does not compel a defendant to arbitrate. *Id.* at 10-14.

**III.  Discussion**

For the reasons explained below, the Court denies the Petition to Compel Arbitration and grants the Motion to Amend.

A.  <u>Petition to Compel Arbitration</u>

The FAA states, in pertinent part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. In turn, sections 3 and 4 of the FAA grant U.S. District Courts the power to stay litigation in cases referred to arbitration and the power to compel parties to engage in arbitration.

Section 4 of the FAA states: "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4; *see also Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020).

In considering a motion to compel arbitration, the FAA "limits the court's role to deciding whether: (1) a valid agreement to arbitrate exists between the parties and (2) the scope of the agreement encompasses the claims." *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1194 (9th Cir. 2024) (cleaned up) (internal citation omitted). It is this first question that is at issue when determining whether a non-signatory is bound to an arbitration agreement. *See RUAG*, 538 P.3d at 433 ("Where a nonsignatory is involved in a motion to compel arbitration under a contract, there is a question as to the very existence of an agreement involving the nonsignatory.").[2] In these circumstances, the federal policy favoring arbitrability does not apply. *Comer*, 436 F.3d at n.11 (holding that "the liberal federal policy regarding the scope of arbitrable issues is inapposite" when the relevant question "is not whether a particular issue is arbitrable, but whether a particular *party* is bound by the arbitration agreement") (emphasis in original). *See also Fleetwood Enters., Inc., v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2005) ("[The] federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.").

Although the Nevada Supreme Court has cautioned that arbitration agreements "must not be so broadly construed as to encompass claims and parties that were not intended by the original contract," *Truck Ins. Exch.*, 189 P.3d at 660 (quoting *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773 (2d Cir. 1995)), non-signatories to an agreement "may be bound to an arbitration clause when rules of law or equity would bind them to the contract generally." *El Jen Med. Hosp., Inc. v. Tyler*, 535 P.3d 660, 666 (Nev. 2023); *see also Comer*, 436 F.3d at 1101 ("[N]onsignatories

---

[2] Plaintiffs cite *Campanelli v. Conservas Altamira, S.A.*, 477 P.2d 870 (Nev. 1970), to support the proposition that arbitration is not limited to signatories to an agreement. ECF No. 1-2 at 7. While this statement is true, *Campanelli* does not say this. Rather, the portion of the decision cited by Plaintiffs simply states that under New York law, a signature is not required for an arbitration agreement to be enforceable between two named parties. 477 P.2d at 872. As the above statement in *RUAG* makes clear, the issue that must be resolved when determining whether a non-signatory may properly be compelled to arbitrate is whether an agreement even exists between the parties in question under traditional contract principles, not whether such an agreement must be signed and reduced to writing.

5

of arbitration agreements may be bound by the agreement under ordinary contract and agency principles.").

Because this question turns on traditional principles of contract, courts must apply state law to determine whether an arbitration provision may be enforced by or against non-parties to the underlying agreement. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). The Court thus considers each of Plaintiffs' arguments under relevant Nevada law and, as appropriate for guidance, applicable principles of law from other states.

In *Truck Ins. Exch.*, the Nevada Supreme Court recognized five theories under which a non-signatory to an agreement may be compelled by a signatory to arbitrate under that agreement's arbitration provision: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel. 189 P.3d at 660 (citing *Thomson-CSF, S.A.*, 64 F.3d at 776). Recently in *RUAG*, that court clarified that these same five theories may be used to determine whether a non-signatory has the right to enforce an arbitration provision, and concluded that one non-signatory may compel another non-signatory into arbitration so long as "both the right to enforce the contract and … compelling another nonsignatory to arbitration" are supported under one of the five theories. 538 P.3d at 434-36.

Because both Plaintiffs and Defendant in this case are non-signatories to the HSA, the Court considers whether Plaintiffs have the right to enforce the HSA's arbitration provision as well as whether Sun Life may be bound by that same provision under one of the five theories recognized under Nevada law. *Id*. The first of these questions is answered more readily than the second.

Sunrise in its Statement of Claim in the underlying arbitration proceeding asserted that Plaintiffs agreed to "abide by the requirements of the Hospital Services Agreement" as consideration for accessing Cigna's network of providers. ECF No. 1-2 at 20. Plaintiffs did not deny this in their responsive pleading, nor do they do so now in the instant Petition. Further, Sun Life in its Response does not dispute Plaintiffs' right to enforce the HSA's arbitration provision generally; the only dispute is whether that provision can be enforced against Sun Life as a non-signatory. These facts—uncontested in the instant Motion—establish Plaintiffs have the right to enforce the HSA's arbitration provision under a theory of assumption.

6

With Plaintiffs' right to enforce the HSA's provisions undisputed, the Court must determine whether compelling Sun Life to arbitrate under the HSA is supported by one of the five theories listed in *Truck Ins. Exch.* In their Petition, Plaintiffs raise two theories under which they assert Sun Life is bound by the HSA's arbitration provision: (1) third-party beneficiary, and (2) equitable estoppel. For the reasons given below, the Court finds neither of these theories apply.

### 1. *Third-Party Beneficiary*

The Court begins by noting that while Plaintiffs include third-party beneficiary as a sixth theory recognized under Nevada law as a basis for compelling Sun Life to arbitrate, ECF No. 1-2 at 7, this assertion is inconsistent with case law. As explained *supra*, the Nevada Supreme Court's decisions in *Truck Ins. Exch.* and *RUAG* each list the same five bases for finding non-signatories may be bound to arbitration agreements; third-party beneficiary status is not one of them. *Truck Ins. Exch.*, 189 P.3d at 660; *RUAG*, 538 P.3d at 434. Plaintiffs' attempt to support third-party beneficiary status as a sixth theory by citing to these cases is misguided.

Plaintiffs' cite to *Comer* also provides no support for Plaintiffs' theory. It is true that in *Comer* the Ninth Circuit acknowledged that non-signatories could enforce arbitration agreements as third-party beneficiaries. 436 F.3d at 1101. However, in doing so, the Ninth Circuit made clear that while "[a] third party beneficiary might in certain circumstances *have the power to sue under a contract*; it certainly cannot be bound to a contract it did not sign or otherwise assent to." *Id.* at 1102 (citing *Motorsport Eng'g, Inc. v. Maserati SPA*, 316 F.3d 26, 29 (1st Cir. 2002)) (emphasis added). Setting aside that *Comer* does not apply Nevada law, the decision is logically interpreted as holding non-signatory, third-party beneficiary may *enforce* an arbitration provision, but third-party beneficiary status is not a basis under which a non-signatory is ordinarily compelled to arbitrate by another as Plaintiffs are attempting to do here.

Further, contrary to Plaintiffs' representations, Sun Life does not cite *Comer* for the proposition that "third-party beneficiaries can *never* be compelled to arbitrate as nonsignatories to an arbitration provision." ECF No. 26 at 7 (emphasis in original). Rather, Sun Life argues that the status of third-party beneficiary, *by itself*, does not bind a non-signatory to an arbitration provision. ECF No. 13 at 8-9. The Court agrees. As the Nevada Supreme Court recognized in *Truck Ins. Exch.*,

189 P.3d at 661 (citing *Int'l. Paper v. Schwabedissen Maschinen & Anlagen*, 206 F.3d 411 (4th Cir. 2000)), a non-signatory to an agreement may be compelled to arbitrate under that agreement when they seek to enforce its terms; however, none of the cases cited by Plaintiffs hold that a non-signatory is bound by an arbitration provision by mere fact of their status as a third-party beneficiary.

Underlying this point, Plaintiffs cite *Canfora v. Coast Hotels & Casinos, Inc.*, 121 P.3d 599, 604-605 (Nev. 2005), for the proposition that third-party beneficiary status is a sufficient basis to compel a non-party to arbitrate. ECF No. 26 at 7. However, *Canfora* did not involve an arbitration provision; it held that an intended and named beneficiary of an insurance policy is bound by that policy's subrogation clause if that beneficiary chooses to bring a personal injury suit related to expenses paid under that policy. *Canfora*, 121 P.3d at 604-605. Even supposing, as Plaintiffs do, that this reasoning can be extrapolated to the context of an arbitration provision, *Canfora* is still inapposite because Sun Life is neither a named beneficiary of the HSA nor is it attempting to bring suit against any party involved in the underlying dispute.

Moreover, even if the Court assumes, *arguendo*, that third-party beneficiary status alone is sufficient to bind Sun Life to the HSA's arbitration provision, the Court finds there is no basis for treating Sun Life as a third-party beneficiary of the HSA. Under Nevada law, third-party beneficiary status cannot be established unless two prongs are satisfied: first, "there must clearly appear a promissory intent to benefit the third party"; second, it must be shown that "the third party's reliance thereon is foreseeable." *Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 824-25 (Nev. 1977) (internal quotations omitted). Applying the first prong of this standard, Plaintiffs' exhibits demonstrate the HSA was signed in 2007; whereas the stop-loss policy between the Kenai Plan and Sun Life was entered into approximately fourteen years later in 2021. ECF No. 1-2 at 153, 173. There can exist no promissory intent within the HSA to benefit Sun Life based on an insurer relationship that would not arise until fourteen years after the agreement was formed. *See F.W. Hempel & Co. v. Metal World, Inc.*, 721 F.2d 610, 614 (7th Cir. 1983) ("[S]tatus as a direct third party beneficiary must be tested with reference to the intentions of [the signatories] at the time the two parties 'executed' their agreement.").

Plaintiffs further argue that portions of the HSA referring to primary and secondary payors evidences an intent for parties other than Cigna to benefit from the agreement's discounted rates. ECF No. 1-2 at 10. However, precedential case law holds that such general language directed at an unspecified and undefined group of potential secondary payors does not meet the level of intent required to establish third-party beneficiary status under Nevada law. For example, in *Boesiger v. Desert Appraisals, LLC*, 444 P.3d 436 (Nev. 2019), the Nevada Supreme Court considered whether language in an appraisal agreement stating that "mortgage insurers, government sponsored enterprises, and other secondary market participants" were entitled to rely on an appraisal issued under that agreement was sufficient to render these entities third-party beneficiaries. *Id.* at 197. The court held the provision did not do so stating the court "c[ould] not conclude that such generic terms indicate a clear intent to confer third-party contract rights to such a broad class of unnamed entities." *Id.*[3]

The fact that, by the terms of its Policy, Sun Life pays the same rates—that is, the discounted rates—charged to the Kenai Plan does not confer on Sun Life rights or obligations under the HSA. *Olson v. Iacometti*, 533 P.2d 1360, 1362-63 (Nev. 1975). *Olson* involved a debtor whose property was subject to two trust deeds by separate creditors. *Id.* at 1362. Prior to a foreclosure sale by the first deed of trust holder, the second deed of trust holder entered into an agreement to purchase the property. *Id.* After the foreclosure sale, the second deed of trust holder consummated the purchase and subsequently sued Olson for amounts due under "a note … secured by the second deed of trust." *Id.* After disposing of other claims, the Nevada Supreme Court considered whether Olson was a third-party beneficiary to the agreement between the first and second deed of trust holders. *Id.* at 1363. Olson claimed to be a third-party beneficiary arguing the sale effected a discharge of the note owed to the second deed of trust holder. *Id.* The court rejected Olson's claim stating the agreement between the deed holders was not for his benefit. *Id.* The Nevada Supreme Court found the only

---

[3] Plaintiffs cite a decision by this District for the proposition that a party need not be specifically named to be considered a third-party beneficiary. *Williams v. Univ. Med. Ctr. of S. Nev.*, 688 F. Supp. 2d 1134 (D. Nev. 2010). While this may be true in certain circumstances, as *Boesiger*—decided subsequent to *Williams*—plainly establishes, *Williams* (involving whether hospital by-laws create a contract between the hospital and staff) is not reasonably read to mean generic terms like "secondary payors" automatically confer third-party beneficiary status upon all unspecified parties that may someday be charged discounted rates as an indirect result of the HSA's discounts. Rather, *Williams* requires proof of the same two prongs—promissory intent and reliance—as *Lipshie*. *Id.* at 1144.

9

1    benefit to Olson under the agreement between the two deed holders "would have been to net
2    proceeds of the sale after all amounts owed by him to [the first deed holder] had been paid in full by
3    the trustee," and that "[t]he fact that he might incidentally benefit by the performance of the
4    agreement [wa]s insufficient" to make him an intended third-party beneficiary. *Id.* The Nevada
5    Supreme Court confirmed incidental beneficiaries of the performance of a contract insufficient to
6    establish third-party beneficiary status in *Herman v. Venetian Casino Resort LLC*, 498 P.3d 776
7    (Nev. 2021) (the fact that an employer passes a portion of service charges contained in banquet
8    contracts to servers does not confer to those servers third-party beneficiary status). *See also*
9    *McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1092 (9th Cir. 2003)
10   ("[I]f a third party happens to benefit from the performance of the promise either coincidentally or
11   indirectly, then the third party will have no enforceable rights under the contract.") (citing *E.I.*
12   *Dupont de Nemours & Co. v. Rhone Poulenc Fiber and Resin Intermediartes, S.A.S.*, 269 F.3d 187,
13   196 (3rd Cir. 2001)) (internal quotation marks omitted).

14      The Court finds Plaintiffs fail to establish the promissory intent required by the first prong
15   of the third-party beneficiary test necessary to bind Sun Life to the HSA arbitration provision. For
16   this reason, consideration of the second prong is unnecessary. However, for sake of completeness,
17   the Court notes there is no evidence that Sun Life foreseeably relied on any alleged benefit under
18   the HSA.

19      Plaintiffs argue that Sun Life was "aware" of the HSA's discounted rates because it included
20   within the Policy a provision specifying that a claims paid detailed report (the submission of which
21   is optional) should include a "Discount amount." ECF No. 1-2 at 9-10, 189. Plaintiffs provide no
22   evidence that the discount provision in the Policy was a negotiated term or that the same provision
23   does not appear in every stop-loss policy issued by Sun Life. Moreover, a review of the Policy as a
24   whole demonstrates this provision is generic and not directed towards any specific provider
25   agreement or discount. *Id.* at 189. Logic and reason dictates a stop-loss insurer is not going to pay
26   a rate greater than its insured is required to pay. The very purpose of stop-loss insurance is "to
27   protect self-insurers [such as an ERISA employee benefit plan like the Kenai Plan] from risks beyond
28   those upon which the premiums are based." *Tanadgusix Corporation v. ARM, Ltd*, 429 F.Supp.3d

677, 694-95 (D. Alaska 2019) (internal citation omitted); *Connecticut General Life Ins. Co. v. Johnson*, 3 Cal.2d 83, 87, 43 P.2d 278 (Cal. 1935) (applying California law, the court explained reinsurance agreements are separate and distinct from the policy agreements entered into by the insurer; they are agreements to provide indemnification.).[4] Plaintiffs offer nothing that would support, let alone suggest, that a re-insurer would ever pay a claim at a rate greater than the cost incurred by the initial insurer itself. To contend otherwise is the very antithesis of the purpose of the reinsurance. Thus, the Policy provision stating Sun Life would not reimburse Kenai for any amount paid "in excess of a negotiated provider discount" does not establish foreseeable reliance on the HSA's discounts.[5]

Based on the above, the Court finds Plaintiffs' third-party beneficiary arguments fail and, as such, Sun Life cannot be compelled to participate in the arbitration between Plaintiffs and Sunrise.

   *2.    Estoppel*

In the context of arbitration agreements, the doctrine of estoppel operates to prevent non-signatories from "refusing to comply with an arbitration clause when it received a direct benefit from a contract containing an arbitration clause." *Truck Ins. Exch.*, 189 P.3d at 661 (quoting *Int'l Paper*, 206 F.3d at 418) (internal quotation marks omitted). Therefore, a non-signatory may be compelled to arbitrate when they "knowingly exploit[] the agreement containing the arbitration clause despite having never signed the agreement." *Comer*, 436 F.3d at 1101 (quoting *DuPont*, 269 F.3d at 199).

Here, Plaintiffs again argue that Sun Life received a "direct benefit" from the HSA in the form of discounted rates and, therefore, should be estopped from avoiding that agreement's arbitration provision. ECF No. 1-2 at 11. However, the discounted rates charged by Sunrise to the

---

[4] No Pacific Reporter jump cite available.
[5] In its Motion to Supplement, Plaintiffs offer conclusory statements that logs showing communication between Sun Life and Sunrise regarding the "investigation, processing, and denial" of claims arising from care provided to Baby K.T. proves Sun Life "foreseeably rel[ied] … on the HSA." ECF No. 28 at 3. Plaintiffs conflate agency and foreseeability contending (1) Cigna notified Sunrise that Sun Life's "stop loss policies would be involved in the claim"; Cigna then requested bifurcation of the claims for purposes of submission of claims to Sun Life; (3) Sunrise complied with Cigna's request; and (4) Sunrise and Sun Life subsequently communicated about the bills submitted. *Id*. at 5-6. These facts are followed by a discussion of agency, not foreseeability. *Id*. at 6. Nevertheless, if these facts are sufficient to establish foreseeability of Sun Life's reliance on the HSA, as required by Nevada law, then every stop loss insurer becomes a third-party beneficiary when it conducts normal business and communicates with a provider to whom it may be liable. There is simply no law to support this argument (indeed, Plaintiffs cite none) and adoption would be a drastic change in law that is unwarranted.

11

Kenai Plan are not a direct benefit to Sun Life. The HSA's discounted rates were intended to benefit Cigna and other payors (such as Kenai) with whom Cigna contracted. Any benefit to a secondary or stop-loss insurer is only indirect and incidental. As stated in *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 688 (7th Cir. 2005) interpreting Illinois law, "[e]ven assuming that [a non-signatory] has benefitted from the deductible agreements by paying lower insurance premiums based on the deductibles, this benefit is too attenuated and indirect to force arbitration under an estoppel theory." *See also UFCW & Employers Benefit Trust v. Sutter Health*, 194 Cal. Rptr.3d 190, 207 (Cal. 2015) (interpreting California law and rejecting the contention that a non-signatory accepted the benefits of a contract containing an arbitration clause). The non-signatory was a health care employee benefits trust (the "Trust") that contracted with a network vendor (Blue Shield), which in turn had a separate provider contract with a health care provider (Sutter Health). (*Id.* at 193.) The Trust sued Sutter Health claiming that provider contracts between Sutter Health and network vendors, such as Blue Shield, were anticompetitive and caused the Trust (and others) to overpay for health care services. *Id*. Sutter Health sought to compel arbitration under the provider contract even though the Trust was not a signatory arguing the Trust "accept[ed] the benefits" of the provider contract by enjoying discounted rates negotiated by Blue Shield. *Id.* at 207. The California appellate court rejected this argument concluding that the purported benefit the Trust enjoyed resulted directly from its contract with Blue Shield, in which the Trust paid consideration for access to Blue Shield's discounted provider rates. *Id*. Insofar as the Trust benefited from reduced rates Blue Shield had negotiated with health care providers such as Sutter Health, the benefit was too indirect to compel arbitration on an equitable estoppel theory.

Further, even if the Court assumes the discounted rates were a direct benefit enjoyed by Sun Life, Plaintiffs' estoppel argument runs into the same "insurmountable hurdle" as do the rest of their arguments—Sun Life "[does] not seek to enforce the terms of the [agreement], nor otherwise to take advantage of them." *Comer*, 436 F.3d 1102. Every case applying Nevada law reviewed by the Court, applies the theory of estoppel when the benefit enjoyed by a non-signatory takes the form of a claim brought under the relevant contract. *See, e.g.*, *Ahlers v. Ryland Homes Nev.*, 367 P.3d 743 (Nev. 2010) *as explained in* 2010 Nev. Unpub. LEXIS 209, at *5 (Nev. April 16, 2010) (non-

signatory to an option agreement is bound to that agreement's arbitration provision because they brought a claim based on the agreement); *U.S. Home Corp. v. Lanier*, 431 P.3d 38 (Nev. 2018) (homeowner may be compelled to arbitrate under a purchase-sale agreement's arbitration provision despite no signed document having been produced if the homeowner nonetheless asserted breach of contract); *Michalowski v. Second Judicial Dist. Court of Nev.*, 131 Nev. 1321 (2015) (same).[6]

Estoppel has no relevance when the non-signatory against whom an order compelling arbitration is sought has not initiated a claim under the agreement in which the arbitration provision is found. As explained very recently by the Nevada Supreme Court in *El Jen Med. Hosp.*, 535 P.3d at 670 (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732. 741 (Tex. 2005)), direct benefits estoppel applies "only if the nonsignatory party 'seeks, through [a] claim, to derive a direct benefit from the contract containing the arbitration provision.'" This statement of Nevada law belies Plaintiffs' estoppel contention. Sun Life is not seeking, and has not sought, to bring a claim enforcing any rights under the HSA. If the discounted rates are a substantive right Sun Life is entitled to under the HSA, it is not currently seeking to enforce this right against a signatory to that agreement or anyone else. Rather, it is Plaintiffs who seek to bring a claim against Sun Life for breach of their Policy Agreement. ECF No. 1-2 at 72-74; ECF No. 27-6.

Plaintiffs argue that the standard in *El Jen* does not apply here because the Nevada Supreme Court's decision in *RUAG* established a separate test applicable when a non-signatory seeks to compel another non-signatory to arbitrate under a theory of estoppel. ECF No. 26 at 11. Plaintiffs are incorrect. The portion of *RUAG* cited by Plaintiffs recognized that the standard for whether a non-signatory has the right to compel arbitration through estoppel is distinct from the standard for whether a non-signatory can itself be compelled to arbitrate. 538 P.3d at 435. When, as is the case here, there is a non-signatory on each side of a petition to compel arbitration, two prongs must be satisfied. *Id.* at 436 ("[W]here a nonsignatory … moves to compel another nonsignatory to arbitrate, the nonsignatory seeking to compel arbitration must demonstrate the right to enforce the arbitration agreement and show … that compelling the other nonsignatory to arbitration is warranted."). What Plaintiffs present as a new test is in reality the established standard for determining whether a non-

---

[6] No Pacific Reporter cite available.

signatory has the right to enforce an arbitration provision. *See Comer*, 436 F.3d at 1101 (citing *Thomson-CSF, S.A.*, 64 F.3d at 776). The effect of the *RUAG* decision was to clarify that although this standard was typically applied in the context of a non-signatory compelling a signatory, it was also applicable when the party against whom arbitration is sought is a non-signatory. *RUAG*, 538 P.3d at 435. Plaintiffs must demonstrate that compelling Sun Life was warranted under *El Jen*. As explained above, Plaintiffs fail to do so.

        3.     *Requesting an Audit Did Not Subject Sun Life to the HSA's Arbitration Provision.*

Plaintiffs offer an additional grounds for estoppel for the first time in their Reply. Plaintiffs contend that equitable estoppel applies in this case because Sun Life availed itself of the "audit provision" of the HSA by engaging a third-party auditor, Quantify Health, to review the claim submitted by Sunrise. ECF No. 26 at 3-5, 10. Plaintiffs support this assertion by attaching Explanation of Benefit ("EOB") statements from HMA to Sunrise that identify a stop-loss insurer, presumably Sun Life, as the one who requested the audit. ECF No. 27-3 at 2, 27-4 at 3. Plaintiffs do not elaborate on which section of the HSA they are referencing when they assert that Sun Life "availed itself of the audit procedures of the HSA." ECF No. 26 at 3. After conducting a review of the agreement, the Court finds Plaintiffs contend that Sun Life conducted an audit of Sunrise's claim under § II.B.12 of the HSA. This provision states: "CIGNA or its designee shall have the right to conduct periodic audits of Hospital billing records and to determine if amounts have been properly billed under this Agreement," and that "both parties shall have the right to initiate and conduct third party audits of claims paid or denied." ECF No. 1-2 at 33. By supposedly exercising the right to request an audit on their behalf, Plaintiffs argue Sun Life received a benefit under the HSA and should therefore be estopped from avoiding the burden of that agreement's arbitration provision. ECF No. 26 at 11.

The Court finds it doubtful that fact of requesting an audit under a provision of the HSA, without more, would be sufficient to subject a non-signatory, like Sun Life, to an arbitration provision. However, even if assertion is accepted as true, this new argument fails to address the fact that there appears to be no precedent under Nevada law holding that a non-signatory subjects itself

to an arbitration provision in a contract when the non-signatory is not itself pursuing a claim under that contract. As explained above, the only case cited by Plaintiffs which held that a non-signatory to an agreement was bound by the agreement's arbitration provision under a theory of estoppel, *Ahlers*, reached this holding because the non-signatory being compelled was the entity bringing a claim. 2010 Nev. Unpub. LEXIS 209 at *5. In *Ahlers*, the non-signatory accessed a right under an agreement, filed a lawsuit based on the agreement, and then sought to avoid the requirement to arbitrate found in that same agreement. *Id*. The Nevada Supreme Court held "[b]ecause [plaintiff] is seeking to enforce rights under the … agreement, it cannot simultaneously avoid other portions of the agreement, such as the arbitration provision." *Id.*

Here, at the risk of redundancy, Sun Life brings no claims and seeks to enforce no rights. It is Kenai that alleges Sun Life has breached the Policy between Kenai and Sun Life. It is Kenai who is attempting to drag Sun Life into an arbitration brought by Sunrise. Kenai is free to bring a claim against Sun Life based on an alleged breach of the stop-loss Policy, but Sun Life has not subjected itself to, nor claims any rights under, the agreement between Cigna and Sunrise.

Moreover, the Court does not need to decide whether the use of an agreement's audit procedures is sufficient to bind a third-party to that agreement's arbitration provision in order to resolve the present Motion because Plaintiffs fail to establish that the HSA's audit provision was, in fact, utilized by Sun Life. As stated above, the Court finds Plaintiffs are referencing section II.B.12 of the HSA when they mention the "audit procedures of the HSA." ECF No. 26 at 3. But, Kenai ignores that the terms of its Policy with Sun Life includes an express audit provision. ECF No. 1-2 at 194. This provision gives Sun Life an independent "right to inspect and audit any and all of [Kenai Drilling's] records and procedures, and those of [Kenai Drilling's] TPA and *any other party*, that relate to any claim made by [Kenai Drilling] under this Policy," and states Sun Life "reserve[s] the right to employ a third party, at [its] expense, to assist [it] with any audit function." *Id.* (emphasis added). Thus, the fact that Sun Life employed a third- party to conduct an audit is not evidence of Sun Life's access of a right under the HSA.

Said simply, any right Plaintiffs assert that Sun Life exercised under the HSA by requesting a third-party audit was a right that existed independently under the Policy between Sun Life and

15

Kenai Drilling. The documents attached to Plaintiffs' Reply show that Quantify Health completed its audit by the time of its first communication with Sunrise, which strongly suggests that documents reviewed by Sun Life when conducting its audit were not obtained from Sunrise. ECF Nos. 27-1 (attaching Quantify Health's February 3, 2023 audit to a letter to Sunrise) *compare* ECF No. 27-2 (the Sunrise June 22, 2023 letter to the Kenai Plan referencing the completed Quantify Health audit). Plaintiffs have not established that Sun Life exercised any right or benefit under the HSA by requesting an audit. In the absence of evidence showing Sun Life's audit was conducted under the terms of the HSA (rather than under the terms of the Sun Life Policy) the Court finds no bases upon which to conclude Sun Life took advantage of a provision of the HSA thereby subjecting itself to the arbitration provision therein.

### B.   Motion for Leave to Supplement Petition to Compel Arbitration

After the underlying Petition was fully briefed, Plaintiffs moved to supplement the Petition with an exhibit consisting of additional materials produced as part of the ongoing arbitration proceeding. ECF No. 28. Local Rule 7-2(g) provides that leave to file supplemental pleadings, briefs, authorities, or evidence should only be granted for "good cause." LR 7-2(g). The primary inquiry under this standard centers on the diligence of the moving party. *McAteer v. Sunflower Bank*, 2024 WL 1054441, at *1 (D. Nev. Mar. 11, 2024). Based on representations by Plaintiffs, it appears that the evidence upon which the supplement is based was not produced in the underlying arbitration proceeding until after Plaintiffs filed their initial Petition to Compel Arbitration. ECF No. 28 at 4. The Court therefore finds no lack of diligence by Plaintiffs and grants their Motion to Supplement the Petition to Compel Arbitration. However, for the reasons stated below, the Court finds that the additional materials do not change the outcome of this Order.[7]

In their Supplement, Plaintiffs point to various communications between or among Cigna, HMA, Sunrise, and Sun Life regarding the underlying claim as documented in logs produced by Sunrise. ECF No. 28. The proposed supplemental exhibit consists of nearly 200 pages of logs on which Plaintiffs rely to argue that Sun Life was involved in processing the claim from its onset (as

---

[7]   Because the Court finds that the supplemental exhibit does affect the outcome of the Petition to Compel Arbitration, the Court also finds that further briefing on the Motion to Supplement is unnecessary. The Court denies Sun Life's Motion to Extend Time to Respond (ECF No. 31) as moot.

the reinsurer of the Kenai Plan) and that Sunrise was therefore aware of Sun Life's role as a secondary payor. ECF No. 28 at 5. In sum, Plaintiffs' Supplement offers a conclusory argument that communication between Sun Life (a re-insurer) and Sunrise (an underlying provider of services) regarding a disputed claim proves that Sun Life relied on the HSA "to needle down and dispute the bills," which, in turn, establishes Sun Life must be subject to the arbitration provision in the HSA. *Id*. at 4. If communication between a stop-loss insurer and provider regarding disputed bills were sufficient to establish third-party beneficiary status, every stop-loss provider would be subjected to the terms of agreements between health providers and health care insurers or self-insured entities. There is no law that supports such a contention and to reach this result would be contrary to all the law discussed above.

Plaintiffs at various points also seem to argue that agency binds Sun Life to the arbitration provision in the HSA. *Id.* at 3, 6. Although agency is a grounds under which a non-signatory may be compelled to arbitrate, *Truck Ins. Exch.*, 189 P.3d at 660, Plaintiffs did not present an argument in favor of agency in its Petition to Compel Arbitration. Moreover, the Court finds this argument fails because Plaintiffs misunderstand the law. An agent may bind the principal; however, "an agent who, acting within the scope of his authority, … does not bind himself, in the absence of an express agreement to do so." *Pletcher v. Boulevard Theater, LLC*, 132 Nev. 1018, 2016 WL 1567055 (Table) (Apr. 15, 2016) *citing Swartout v. Grover Collins Drilling Mud Eng'rs and Materials*, 339 P.2d 768, 769 (Nev. 1959) (quoting *Siler v. Perkins*, 149 S.W. 1060, 1061 (Tenn. 1912)). Plaintiffs do not argue that Plaintiffs were Sun Life's agent in-fact, but that Sun Life acted as their agents. ECF No. 28 at 6 ("This evidence further supports Kenai's allegation that Sun Life acted as Kenai's agent with respect to Baby K.T.'s claims."). Plaintiffs also do not allege that an express agency agreement exist. Therefore, Plaintiffs fail to demonstrate Sun Life bound itself to the HSA's arbitration provision based on an agency relationship with Kenai.

The caselaw Plaintiffs cite in their Motion is inapposite. In *Ball v. Citibank, N.A.*, Case No. 2:24-CV-00222-JAD-EJY, 2024 WL 2115838 (D. Nev. May 9, 2024), the court held that an *authorized user* of a credit card account was an agent of the signatory with respect to the account where the credit card agreement stated that all authorized users were the account holder's agents.

17

Plaintiffs point to no provision of the HSA holding that a stop-loss insurer is a primary payor's agent for purposes of any claim the stop-loss insurer pays on their behalf. Moreover, *Ball* itself recognized that "an agent isn't traditionally bound to his principal's contracts; it's the other way around." *Id.* at *3. *Ball* noted an exception in situations in which the principal acts on the agent's behalf with apparent authority. *Id.* Importantly, Plaintiffs do not argue that Sun Life acted with authority, actual or apparent, to bind Kenai or the Kenai Plan. ECF No. 28, generally. To the contrary, Plaintiffs emphasize that all actions regarding the disputed claim were taken "without Kenai's knowledge, direction, or approval." *Id.* at 6.

The second case cited, *Tallman v. Eighth Judicial District Court*, 359 P.3d 113 (Nev. 2015), similarly provides no support for Plaintiffs' position. *Tallman* involves a long-form arbitration agreement that by its terms covered claims not only against parties to the agreement but also "against [their] officers, directors, managers, employees or agents." *Id.* at 119. The Nevada Supreme Court held that a claim brought against the employees of a party to the agreement, where such claim arose from actions taken in the scope of their employment, was subject to the agreement's arbitration clause. *Id.* Sun Life is not an employee of Sunrise.

Plaintiffs provide no plausible grounds for the existence of an agency relationship between themselves and Sun Life. The terms of the Policy between the parties grants Sun Life the ability to request documents relating to and perform an audit of any claim made under that policy, but it includes no language stating that Sun Life becomes Plaintiffs' agent when doing so. ECF No. 1-2 at 194. Plaintiffs' theory, that the mere fact of Sun Life communicating with a provider and negotiating payments relating to a claim transformed it into the Kenai Plan's agent would effectively bind every stop-loss insurer to agreements to which they were not signatories and to which they never consented. The Court declines to take such a dramatic step based on a theory for which Plaintiffs have provided no legal support. For these reasons, though the Court grants Plaintiffs' Motion to Supplement, it does not alter its decision on the Petition to Compel Arbitration.

C.   Motion for Leave to File Amended Complaint

As an alternative to their Petition to Compel Arbitration, Plaintiffs seek leave to file an amended complaint.[8] Rule 15(a)(2) of the Federal Rules of Civil Procedure ("FRCP") provides that once twenty-one days have passed since the service of a responsive pleading, a party may only amend its Complaint "with the opposing party's written consent or the court's leave," and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. Pro. 15. Under this standard, courts consider five factors when determining whether to grant leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011).

Applying these factors here, the Court finds none support denying leave in this instance. Sun Life does not argue bad faith, and there is no undue delay given that Plaintiffs sought leave to amend as part of their first substantive filing after the case was removed to this Court. There is no prejudice to Sun Life given that requiring Plaintiffs to litigate their claims against it in federal court is the very thing Sun Life should anticipate given its opposition to the Petition to Compel Arbitration. Finally, Plaintiffs retain the option to file a new action against Sun Life even if denied leave to amend here. This fact combined with Rule 1's mandate that the FRCP should be employed to "secure the just, speedy, and inexpensive determination" of actions before it, makes it clear to the Court that leave to amend should be granted in this case.

**IV.   Conclusion**

For the reasons discussed above, the Court finds that none of the grounds asserted by Plaintiffs are sufficient to bind Sun Life to the HSA's arbitration provision. Sun Life was not an intended beneficiary of the HSA and received, at most, only indirect benefits from that agreement. Because any benefit received was not a direct benefit, and because Sun Life is not bringing a claim under the HSA against any party, the theory of equitable estoppel is inapplicable. Any evidence indicating that Sun Life initiated an audit of the claim related to care provided to Baby K.T. is

---

[8]   Because this case was initiated by Plaintiffs through the filing of a Petition to Compel Arbitration, and no Complaint was filed (*see* Docket, generally), Plaintiffs' proposed First Amended Complaint is not an amendment. Nonetheless, the Court applies the amendment standard in deciding Plaintiffs' Motion.

irrelevant to this analysis because Sun Life had the right to request such an audit independent of any provision of the HSA. Having recommended denying Plaintiffs' Petition to Compel Arbitration, however, the Court grants Plaintiffs' Motion for Leave to File an Amended Complaint.

## V.   Order

IT IS HEREBY ORDERED that Plaintiffs' Motion for Leave to Amend (ECF No. 27) is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Leave to Supplement (ECF No. 28) is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Extend Time (ECF No. 31) is DENIED as moot.

## VI.   Recommendation

IT IS HEREBY RECOMMENDED that the Petition to Compel Arbitration (ECF No. 1-2) be DENIED.

Dated this 21st day of January, 2025.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

### NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).